Good afternoon. Judge Callahan is joining us by video. Well, there she is. Greetings. You should be presiding, Judge Callahan. All right. Mr. Kelly, please start. Pleases the court. Good afternoon. I thank the panel for allowing this session to take place at the request of myself to advance the hearing. My name is Kevin Kelly. I am the attorney for the appellant. This case comes before the Court from a denial of a motion to suppress in the lower court. The defendant then took a conditional plea. I'd like to direct my comments to the what I believe to be the erroneous interpretation of this Court's decision in U.S. v. Bossie. In Bossie, the Court was concerned with Federal agent withholding his identity and accompanying State of California officials on a consent to search the premises in relationship to a licensing issue for automatic weapons. But the Court, the circuit court found that there were special limitations when the government obtains entry by misrepresenting the scope, the nature, or the purpose of a government's investigation. In this case, the issue was that Federal officials were conducting an investigation over a two-month period. On one occasion, they found they saw the defendant in the location with a known leader of that criminal investigation. They decided to continue following the defendant. And eventually, the head of the task force, Sergeant Chavez, called the Petro Dispatcher and directed that the defendant's agent be held. And I think that's the part of what you want to object to. It seems to me that in light of the fact that the consent given by the defendant was tainted by the misrepresentation of the government's agent, at no time was he advised of the scope, nature, or purpose of the investigation. Ostensibly, the stop was made because of a traffic altercation. But in fact, the true purpose was that they had been following this man for 10, 15 miles, and they wanted to verify whether or not he was involved in drugs and narcotics. I've got a couple of questions for you. And you make your point in a very spirited brief. First of all, was Mr. Dillon on parole? He was, Judge. He was not. He was. He was. Well, as I understand it, a person on parole may be searched without any cause. That may be true, Judge. Well, so? But the idea was that the initial stop was tainted. What difference does that make? Tainted because why? It was tainted because the stop was fabricated. No, no, no, no, no. Tainted because usually you need to have some cause, right? To stop somebody. In other words, the usual rule is in order for the police to stop somebody, they need to have a reasonable suspicion or some kind of cause, right? That's correct. And you're saying there was no cause here because they fabricated it or whatever. I'm saying that the officer who created and the only officer out of the six surveilling officers who saw the defendant commit this traffic offense is the same person who told Metro. All right. But Judge Newman's point is what difference does all that make if he was on parole because you can stop a parolee without any reason at all. Well, you have to know the man's on parole, Your Honor. There's no evidence at that fact that the man was on parole. Well, they got a rap sheet or something, Your Honor. They had no idea who the gentleman was, Your Honor. I'm sorry. I think they did radio in and get some information, Your Honor. At the time that they stopped the individual, they had the vehicle registration. They didn't know that man was actually driving the vehicle. At the time. So you're saying there was no cause at the time of the initial stop, right? That's what I maintain based on the facts of the case. Well, you make a mistake. Yes, Your Honor. The question that I have about that is I realize that that's your position. However, there was testimony both that there was observation of some traffic infraction plus the defendant or the appellant admitted that he had been involved in some sort of traffic road rage situation. Plus, there is testimony of observing activity going on between coming up next to vehicles and the officers testify. It appears to me that the judge made certain factual findings about the credibility of that officer. And so what I would like to know, if the judge made those factual findings, it would seem to me you're not afraid to argue it in the same way that you were in the lower court. You're stuck with some of those. If the judge made certain credibility findings and appeared to have believed the officer's testimony. But I think the court also made a determination as to probable cause to search. And I think the court misapplied the standard for probable cause to arrest versus probable cause to search. And I would suggest that the probable cause to search is different, that the court had to consider not only the particularity of the search, but also whether the. Now, wait a minute, wait a minute. Before the search, as Judge Noonan says, they knew this guy was on parole before any search started. So they don't need cause to search anything, right? I don't know. I listen to Judge Noonan's assertions, but I am not sure that a person on parole is automatically subjected to search at random. I guess you haven't looked up the law, but that's the law. So maybe your case ends there? I don't think so, Your Honor. Let me tell you a further, more radical view I have, though the government doesn't seem to share it. I think they had probable cause once they observed the drug transactions. In other words, there was a whole pattern of conduct that these investigators knew. This is the way this gang operated, drive up in a car, go in, get something. There was enough there. I would have said they could have arrested him on the spot, but. Well, I obviously respectfully disagree. Well, yes. I don't think that's the case at all. The only thing they had was an individual who pulled into a parking space. That in and of itself does not constitute probable cause to arrest. You'd have to be awfully naive to think that's what it was all about. You think these police officers don't have any experience and they just see these people driving up to another car and it's just the way things happen in the world? That's very strange. I believe that we still have the right to associate. That I don't believe the United States. And association for a minute is association. That's ridiculous. I'll take, reserve my time. Thank you. I don't know that you need to say very much, but whenever you feel necessary, go ahead. May it please the Court. Patrick Walsh for the United States. Good afternoon, counsel. I guess I'd be happy to answer any questions. Probably what you've confessed is what is exactly in the record as to when the appellant's parole status became known to the officers? Well. Because you don't argue that and that's a pretty easy answer to all the questions. The, and to be clear, I believe that the record states the defendant is either on parole or probation. In Nevada, they're joined together and supervised by one agency. I'm not sure that makes a difference, but the record doesn't specifically say which of those it is. That came as the, as they were calling to have a patrol officer stop the defendant. Sergeant Chavez was running the license plate. And that is when the DAWNS hit came up, the Dangerous Offenders Notification System, and the record describes what that is. Officer Bengel, who was the patrol officer who did the stop, learned of it. So the officers learned a second time through Officer Bengel after he contacted Mr. Dillon and got his information. He confirmed that the registered owner was Mr. Dillon and that the registered owner and Mr. Dillon were the, was the one that had the parole or probation supervision. Does that make sense, Your Honor? So they knew the call was registered to a guy that was on probation or parole after they saw the traffic infraction, but before the stop. But they didn't know that the driver was that guy until Officer Bengel got his identification. So you agree then to make the stop, they had to have some kind of cause of reasonable suspicion. I believe. All right. What was, what was there? Well, there were two. First, the magistrate judge made a factual finding that Sergeant Chavez observed a traffic infraction, that he cut off another motorist. And the magistrate judge further found that the defendant, Mr. Dillon, admitted that there was some type of road rage incident occurred, although Mr. Dillon claimed it was the other guy. But he confirmed that something happened. So that is the basis first. Second, and I agree with you, Judge Noonan, that there was clearly reasonable suspicion, if not probable cause, to believe this car was engaged in drug trafficking and that it could have been stopped on that occasion. You mean based upon the conduct that happened in the parking lot before the stop? That's right. And it's not just the parking lot, Your Honor. The officers testified that this scenario happened more than just two times before. And the magistrate judge made a finding, I think he said many times, that the drug dealer that met with Mr. Dillon left a location that was identified in the record as a stash house for drugs, and that that drug dealer had left that location on several occasions. And on two of those several occasions, he delivered drugs to an undercover officer. And that was recent in time. And then he used the same car to go from that location, and he drove to a, again, the pattern of driving to a parking lot like a Chevron and having the other individual get in and then get out very quickly was identical, identical to a prior drug transaction. So I believe that created suspicion. But it goes further. They then follow the car to go to a second location, and an officer testifies that using binoculars, he observes the defendant, Mr. Dillon, handing a white package, about half the size of a cigarette pack, to another individual. Again, further evidence of drug trafficking activity. So that was an alternate basis for the stop and for the search of the car under the automobile exception. When you add in all the other information that Officer Bengel found, plus the fact that he was on parole or probation, I think there was more than enough justification to search the car and that compartment. Do you want to respond to Appellant Counsel's argument that Bossie is controlling here? That Bossie and Phillips stand for a proposition that the government doesn't disagree with, and that is that a government agent can't pretend that they're not involved in a criminal investigation and that the consentor is the subject of that in order to trick them into gaining consent. But in this case, that's not what happened. In fact, again, the magistrate judge found that one of the purposes for requesting consent to search was to investigate for weapons. Remember, Officer Bengel was not a narcotics officer. He was a patrol officer. And after seeing that Don's hit, the magistrate judge found, and Officer Bengel testified, that he wanted to see if that guy had weapons. And, in fact, he saw what might have been a weapon. When Mr. Dillon got out of the car, he saw that large screwdriver there, and he was concerned because it was right where a driver could grab it, and he thought that might be a weapon that Mr. Dillon was using. And so his request to search for weapons was not some ruse. That's a legitimate purpose. There's no case that defense cites or that the government can find that says that a police officer must disclose every single crime he's investigating when requesting consent to search. And here, the scope was carefully limited to only areas in the car where a weapon could be found. Three separate officers testified that that compartment could have held a firearm. So there is so bossy, and the other cases are not a posit here because the nature of the investigation, that is Officer Bengel telling Mr. Dillon that in no uncertain terms, basically, that he's checking to make sure he's not committing a crime that is a violation of his probation or parole. So Mr. Dillon was on notice, was told he had a right to refuse this request, and did so knowing that if evidence was found, that he would be prosecuted. Unless the panel has any further questions, I'll submit the rest of my time. Thank you. I would only stress the fact that I think the bossy decision is controlling in this matter. I think the nature, the scope, and the purpose of the stop and the search was never explained to the defendant. To suggest that this officer merely stopped it and searched it because of the traffic is ludicrous in light of the investigation that was ongoing. I'd ask the Court to submit it. Thank you. Okay, so submitted. Thank you, Mr. Wall, Mr. Kelly. I appreciate your coming. Thank you.
judges: Noonan, Tashima, Callahan